UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

RAO CONSTRUCTION, LLC,

                                             Civil No. 24-585 (JRT/JFD)

            Plaintiff,

v.

                                      **MEMORANDUM OPINION AND ORDER**
ED LUNN CONSTRUCTION, INC.,        **DENYING PLAINTIFF'S MOTION FOR**
                                            **PRELIMINARY INJUNCTION**

            Defendant.

---

Keith J. Kerfeld and Paul Darsow, **TEWKSBURY & KERFELD, P.A.**, 88 South Tenth Street, Suite 300, Minneapolis, MN 55403, for Plaintiff.

John E. Varpness and Steven J. Sheridan, **FISHER BREN & SHERIDAN, LLP**, 920 Second Avenue South, Suite 975, Minneapolis, MN 55402, for Defendant.

Plaintiff RAO Construction, LLC ("RAO") filed this declaratory judgment action to extricate itself from arbitration proceedings with Ed Lunn Construction, Inc. ("ELC"). RAO alleges two contracts underlying arbitral jurisdiction are invalid because RAO's signature was forged on one contract, and it never executed the other. It seeks the Court's intervention before it is forced to respond to subpoenas and depositions on May 9, 2024. Because RAO has not shown a likelihood of success on the merits and will not be irreparably harmed by participating in arbitration while this action proceeds, the Court will deny RAO's motion for a preliminary injunction.

## BACKGROUND

This action arises from a 2015 construction project gone awry. Hudson Senior Housing ("HSH") hired CBS Construction Services ("CBS") as the general contractor to build a senior living facility. (Compl. ¶ 9, Feb. 23, 2024, Docket No. 1.) CBS, in turn, subcontracted with ELC to complete the carpentry work. (*Id.*) ELC then engaged RAO for assistance, though the exact nature of their relationship is disputed. RAO alleges that it told ELC it did not have capacity to work as a subcontractor on the project, but it would loan ELC some workers. (*Id.* ¶¶ 7–8.) ELC alleges RAO took on subcontracting duties. (Decl. John E. Varpness ("Varpness Decl.") ¶ 14, May 1, 2024, Docket No. 22.)

Approximately five years after construction was finished, HSH filed a $4.5 million arbitration action against CBS for damages caused by water incursion. (*Id.* ¶ 12.) CBS joined ELC to the proceedings before the American Arbitration Association ("AAA"). (*Id.* ¶¶ 13, 16.) ELC then joined RAO. (*Id.* ¶ 14.)

There are at least two contracts in which ELC alleges RAO consented to arbitrate disputes, though the veracity of those documents is a key issue in this action. Even before the HSH project, ELC and RAO had a business relationship with one another. (Compl. ¶ 7.) ELC alleges they signed a master agreement in 2014 to govern that relationship, with addenda to follow with scope of work agreements for any specific projects. (Varpness Decl. ¶ 4, Exs. at 3–7.) The 2014 agreement includes an arbitration clause as well as indemnification and defense agreements. (*Id.* at 4, 6.) It appears to be signed by both

parties, though RAO alleges its president's signature was forged and it never signed the agreement. (*Id.* at 7; Varpness Decl. ¶ 21.)

ELC also alleges that it presented RAO with an addendum for the HSH project in 2015. (Compl., Ex. 2.) The 2015 contract again includes an arbitration agreement, but it is not signed by either party. (*Id.* at 2, 4–6.) Additionally, though the document is dated May 1, 2015, RAO hired a forensic analyst who opines the Microsoft Word metadata reveals that the contract document was not created until May 2016. (Aff. Paul Darsow ("Darsow Aff."), Exs. at 17–22, Apr. 26, 2024, Docket No. 17.)

RAO objected to its joinder in the arbitration action, arguing it never agreed to arbitrate given the alleged deficiencies in the contracts and that AAA thus lacked jurisdiction. (Darsow Aff., Exs. at 2–3.) A Rule 7 ("R-7") arbitrator, appointed solely to determine the threshold joinder issue, overruled RAO's objections in November 2022. (*Id.* at 1–4.) It noted that the 2014 "agreement provides that it will govern the parties' 'present and future business dealings'" and, though RAO's signature was disputed, "a written agreement which purports to have been signed by both parties" was enough to proceed with arbitration. (*Id.* at 2.)

Since being joined a year-and-a-half ago, RAO has participated in the arbitration, including by engaging in panel selection, stipulating to scheduling orders, answering interrogatories, and serving discovery requests. (Varpness Decl. ¶¶ 25a–n.) A few weeks after ELC noticed depositions of RAO employees, though, RAO filed this declaratory

judgment action seeking relief from participating in arbitration. (*See generally* Compl.) AAA denied RAO's motion to quash the discovery subpoenas on April 15, 2024, and RAO filed an emergency motion to stay the arbitration and quash the subpoenas on April 26. (*See* Pl.'s Mem. Supp. Emergency Mot. at 6, 14, Apr. 26, 2024, Docket No. 16.) It requests the Court's intervention before the first deposition, scheduled for May 9, 2024. (Darsow Aff. ¶ 20.)

## DISCUSSION

### I.     STANDARD OF REVIEW

Courts evaluating a motion for preliminary injunctive relief weigh four factors, commonly referred to in the Eighth Circuit as the *Dataphase* factors: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm injunctive relief would cause to the other litigants; and (4) the public interest. *Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). The party seeking injunctive relief bears the burden of proving the *Dataphase* factors. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

When applying these factors, "a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999) (quoting *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998)). That said, "injunctive relief is an extraordinary remedy and

the movant has the burden of establishing the propriety of an injunction." *Watts v. Fed. Home Loan Mortg. Corp*., No. 12-692, 2012 WL 1901304, at *3 (D. Minn. May 25, 2012).

## II.   ANALYSIS

The *Dataphase* factors do not weigh RAO's favor, particularly when considering that RAO carries the burden to establish the propriety of injunctive relief. Accordingly, the Court will deny RAO's motion for a preliminary injunction.

### A.   Likelihood of Success on the Merits

Whether parties agreed to arbitration is a question for courts, not arbitrators. *AT&T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 649 (1986). Here, that question turns on whether the contracts are valid.

Start with the 2014 contract. Its language is broad, created to "govern their present and future business dealings" and mandating arbitration "to resolve all disputes arising out of or relating to this Agreement, or relating to [ELC and RAO's] business relationship." (Varpness Decl., Exs. at 3, 6.) Regardless of whether there was an addendum in 2015 for the HSH project, the Court sees little reason why the plain language of the 2014 agreement would not encompass this dispute. Even if RAO only loaned ELC workers, the Court cannot conclude that action would not fall under the parties' "business relationship." RAO suggests that the 2014 agreement was drafted to cover a separate construction project and was never meant to serve as a master agreement. But there is no evidence in the record supporting that assertion.

The remaining issue, then, is whether RAO accepted the 2014 contract. RAO claims its president's signature is forged on the document. But that assertion is too flimsy to assume a likelihood of success on the merits at this juncture. Until there has been some discovery and factual development, the Court will not lightly assume ELC is presenting the Court with a forged document. *Cf.* Smith-Knabb v. Vesper, 206 N.E. 1265, 1273 (Oh. Ct. App. 2023) ("[A] signature on a contract creates a rebuttable presumption that it was validly executed.").

Next, there's the 2015 agreement, which is purportedly a specific addendum for the HSH project. The document is unsigned. But ELC alleges that RAO accepted the contract when it performed the work and received payment. RAO counters that, regardless of performance and payment, it did not accept the 2015 agreement. As its primary proof, it alleges that the agreement was only created in 2016 and backdated to May 2015. RAO's computer forensic expert opines that the document's metadata shows it was created in May 2016, one year after the date listed on the contract. This contention, supported by expert analysis, is at least more supported than the forgery claim for the 2014 contract.

But there are still significant questions as to whether RAO is likely to succeed on the merits. ELC has not had time to produce its own expert or rebuttal. And RAO's expert report skimps on possible limitations of relying on metadata. Beyond the metadata, as a simple matter of common sense, RAO's story seems a bit odd. It appears that RAO and

ELC's relationship was still copacetic in 2016, and there was not yet any dispute over the HSH project. It is difficult to imagine why ELC would create a document in 2016, unprompted, and backdate it one year.

The Court remains open to the possibility that the 2014 contract was limited in scope or the signature was forged, and the 2015 contract was never presented to RAO. Those contentions may grow stronger as this case develops. But on this limited record, the Court cannot conclude that RAO is likely to succeed on the merits.

### B.   Irreparable Harm

RAO asserts that being forced to participate in arbitration when this action belongs in federal court would inherently cause irreparable harm.[1] But there is a split—both between circuits and within the Eighth Circuit—as to whether unconsented arbitration causes *per se* irreparable harm. *See Valspar Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 81 F. Supp. 3d 729, 732–34 & n.4 (D. Minn. 2014). The idea of *per se* irreparable harm makes little sense in this case. *Dataphase* establishes a balancing test, in which the factors are weighed against one another, and none is dispositive. To appropriately conduct that totality inquiry and fairly weigh irreparable harm against the other factors, the Court will examine the actual harm to RAO.

---

[1] *See General Mills, Inc. v. Hunt-Wesson, Inc.*, 889 F. Supp. 1119, 1126 (D. Minn. 1995); *Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215, 1235 & n.21 (E.D. Cal. 2015) (collecting cases that "being required to arbitrate a dispute that the parties did not agree to arbitrate is *per se* irreparable harm.").

It appears the only irreparable harm is the cost of participating in the arbitration. If it turns out AAA does not have jurisdiction but has entered an award against RAO before the Court reaches that conclusion, the Court can vacate the award. *See* 9 U.S.C. §§ 4, 10. RAO will have to spend time and money participating in discovery and, potentially, defending itself at the arbitration hearing. But "economic loss does not, in and of itself, constitute irreparable harm." *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986) (citation omitted).

RAO alleges the arbitration discovery will be duplicative with the discovery for this action. The Court thus expects the discovery RAO seeks to enjoin will reduce the burden of discovery here. And it is unclear how conducting that discovery under the auspices of the AAA instead of the Court would lead to irreparable harm. It also appears that RAO employees may be deposed in the arbitration action regardless of whether RAO remains a party. If the employees are witnesses to the underlying dispute between HSH, CBS, and ELC, they may be subpoenaed even if the Court grants the requested injunction. *See* 9 U.S.C. § 7.

Finally, there is the fact that RAO has not conducted itself as a party facing irreparable harm. AAA joined RAO to the arbitration in late-2022. Since then, RAO has

participated in many stages of arbitration.[2] If the harm was severe and irreparable, it would be odd for RAO to wait until the last possible moment to seek relief.

### C. Balance of Harms

While RAO faces little risk of irreparable harm if injunctive relief is granted, so too does ELC face little risk of irreparable harm if the Court grants an injunction. It, too, would only face litigation costs as a result. The balance of harms thus favors neither party.

### D. Public Interest

Because this is a private dispute between two businesses, the public interest is largely unaffected. RAO contends this case implicates the sanctity of Article III jurisdiction and Due Process concerns. But its arguments about the public interest are just extensions of the merits. Concerns about the Court's jurisdiction and freedom of contract only ensue if one assumes the contracts are not valid. If, on the other hand, one assumes the contracts are valid, then the public interest favors ELC. It too has an interest in enforcing its contractual rights, and the Federal Arbitration Act espouses a public policy of enforcing valid arbitration agreements. Ultimately, the public interest, if evaluated separately from the merits, is neutral.

---

[2] RAO observes that parties do not waive objections to arbitral jurisdiction by participating in the proceedings. *See Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1510 (3d Cir. 1994), *aff'd* 514 U.S. 938 (1995). The Court remarks on voluntary participation not to hint at waiver, but as evidence that there is no emergency.

## CONCLUSION

RAO has not carried its burden under the *Dataphase* factors.  The merits are shaky, irreparable harm is unlikely, and the remaining factors are insufficient to overcome those weaknesses.  Accordingly, the Court will deny RAO's motion for a preliminary injunction.  And because it will not grant a preliminary injunction, the Court will also deny RAO's motion to quash the AAA subpoenas and depositions.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction and for Order Quashing Subpoenas and Depositions [Docket No. 15] is **DENIED**.

DATED: May 8, 2024
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge